## The inhabitants of WELLS vs. The inhabitants of KENNEBUNK.

The wife of an insane pauper in *Kennebunk* left him in 1809, and returned to her father's house in *Newfield*, where she was soon after delivered of a son. She and her son were supported by her father, at his house, for about eight years, when she left that town and removed from this county, to which she never returned. Her husband died in 1820; and the boy continued to live with and be supported by his grandfather, till 1829. Hereupon it was held that the boy was emancipated by his mother; and therefore acquired a settlement by his domicil in *Newfield*, at the passage of *Stat.* 1821, ch. 122.

IN this action, which came before the court upon a case stated, the only question was upon the settlement of *Stephen D. Littlefield,*

a pauper, for whose support the action was brought. The facts appear in the opinion of the Court.

*D. Goodenow*, for the plaintiffs, argued that the clause in the Statute for the settlement and relief of the poor, which fixed all settlements in the place of the then existing domicil, was not intended to apply to minors having derivative settlements from their fathers; but only to those who were not otherwise provided for in the same statute. *Fairfield v Canaan*, 7 *Greenl*. 90.

*Bourne*, for the defendants, cited *North Yarmouth v. Lewiston*, 5 *Greenl*. 57 ; *Sidney v. Winthrop*, ib. 123 ; *Parsonsfield v. Kennebunkport*, 4 *Greenl*. 47 ; *Eastport v. Lubec*, 3 *Greenl*. 220 ; *St. George v. Deer Isle*, ib. 390 ; *Amherst v. Granby*, 7 *Mass*. 1.

MELLEN C. J. delivered the opinion of the Court, at the ensuing term in *Cumberland*.

*Simon Littlefield*, the father of the pauper, had a legal settlement in *Kennebunk*, and died in *October*, 1820, having been for many years prior to his death insane and a town pauper. His wife separated from him in *March*, 1809 ; and it does not appear that they ever lived together afterwards. In *May*, 1809, the pauper was born at *Newfield*, where his mother lived at that time at her father's house, and continued to live until the year 1817, when she removed to *Brighton*, in the county of *Somerset*, and from thence in 1825, to *Clinton*, in the county of *Kennebec*. The pauper continued to live at *Newfield*, with his grandfather, until the autumn of 1821 ; when the grandfather removed to *Brighton*, and the pauper with him, where they both continued to live till 1829, when the pauper left him and went to *Wells*. On these facts the question is whether the pauper has to this time retained his derivative settlement in *Kennebunk*, or gained a new one in his own right in *Newfield*, in virtue of the act of *March* 21, 1821, at which time he was about twelve years of age. A minor child residing with the parents and under their care and nurture does not gain a settlement by the incorporation of a town. *Hallowell v. Gardiner*, 1 *Greenl*. 93 ; *St. George v Deer Isle*, 3 *Greenl*. 390. But a minor, if emancipated, might

26

so gain a settlement, or under the statute of 1821. See the last case. Emancipation is not to be presumed, though it may be implied from circumstances. In *Eastport v. Lubec,* the paupers were helpless orphans, without any home where they had a right to remain. The court adjudged them as settled in *Lubec* by the act of 1821, where they were then supported by a relative. In *St. George v. Deer Isle,* the pauper's mother was married to a second husband, in whose family she had no right to remain at his expense. She was considered as emancipated and capable of gaining a settlement in her own right. In *Parsonsfield v. Kennebunkport,* the pauper was considered as having her residence in the family of her father in law, to which she might always be welcome ; and that her residence at another town in the country on the 21st of *March,* 1821, was merely a temporary one at service ; so that there was no proof of emancipation. In *Pittston v. Wiscasset,* 4 *Greenl.* 293, the pauper was a minor, and prior to the act of 1821, had resided in different places, by direction or permission of his mother ; she receiving a proportion of his wages, and, in some cases, making the contract for his services. This was considered as disproving emancipation, and of course the minor did not gain a new settlement under the statute of 1821. The case before us differs from the foregoing. After the death of *Simon Littlefield,* and indeed from the time of her desertion of him, his widow had no home except in her father's family, who, we are to understand, maintained her and the pauper, then a child. When the child was about eight years old, the mother left the town of *Newfield,* and has never returned to it ; but did not carry the pauper with her ; he lived in the grandfather's family, which was his home, till the year 1829, during all which period, it does not appear that she has contributed to his support, controlled any of his conduct or received any of his wages, if he ever earned any. She seems to have resigned him to the care, government and protection of the grandfather. The language of her conduct seems to be plain and not to be misunderstood. The conduct of the pauper seems to speak a similar language ; he has not followed her, or sought her aid or submitted to her control. Considering all the circumstances of this case, we are led to the conclusion that the pau-

per must be considered as having been emancipated before 1821, and that by his residence and having his home in *Newfield* on the 21st of *March* of that year, he gained a settlement in that town by virtue of the statute before mentioned ; accordingly a nonsuit must be entered.